UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LISA JETER, individually,
and as parent and natural guardian
of K.J., a minor child,

      Plaintiff,

v.                                CASE NO:

FRANK MCKEITHEN in his official capacity as the
SHERIFF of BAY COUNTY, FLORIDA;
CRAIG B. ROMANS, individually; and
GRAY TELEVISION GROUP INC.
a.k.a WJHG-TV

      Defendants,

_____/

## NOTICE OF REMOVAL

      To the Judges of the United States District Court for the Northern District of Florida, Panama City Division, Defendant, Craig B. Romans, in his individual capacity, by and through undersigned counsel, pursuant to the provisions of 28 U.S.C. § 1446, hereby files this Notice of Removal and states:

      1.      On July 8, 2014, an action was commenced against the above-referenced Defendant in the Circuit Court of the Fourteenth Judicial Circuit, in and for Bay County, Florida.  Service was effected upon Defendant Romans on July 31, 2014.

      2.      The above-styled action, as described in the Complaint, is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § § 1331 and 1343, and is one which may be removed to this Court by Defendant Romans pursuant to the provisions of 28 U.S.C. § 1441(b) and 1443, in that Plaintiff, Lisa Jeter, has alleged that Defendant Romans has violated the

federal statutory or constitutional rights of both Jeter and a person for whom she is the natural guardian.

3.      Specifically, it is alleged in the Complaint that Defendant Romans violated Plaintiffs' rights guaranteed by the Fourth Amendment and Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 by improperly arresting the person for whom Jeter is natural gaurdian without probable cause.

4.      Pursuant to 28 U.S.C. § 1446(a), Defendant Romans has filed with this Notice of Removal true and legible copies of the Plaintiffs' Complaint and all process, pleadings or orders on file in the State Court as of the date of this Notice of Removal.

5.      Defendant Roman's counsel has consulted with the attorney who will be representing co-defendant Gray Television Group, Inc., a.k.a. WJHG-TV and is authorized to represent that said co-defendant consents to and will file a written acknowledgment of that consent to removal.  See, Smith v. The Health Center of Lake City, Inc., 252 F.Supp.2d 1336, 1339 (M.D. Fla. 2003).

WHEREFORE, Defendant Romans, respectfully requests that the above action now pending against him in the Circuit Court of the Fourteenth Judicial Circuit in and for Bay County, Florida, be removed therefrom to this Court.

Respectfully submitted this _____ day of August, 2014.

JOHN W. JOLLY, JR.
Florida Bar No. 291961
JOLLY & PETERSON, P.A.
Post Office Box 37400
Tallahassee, Florida 32315
Tel:    (850) 422-0282
Fax:    (850) 422-1913
*Attorneys for Defendant Craig B. Romans*

2

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been sent via U. S. Mail and/or by CM/ECF System delivery to, Marie A. Mattox, Marie A. Mattox, P.A., 310 East Bradford Road, Tallahassee, FL 32303 and Charles Tobin, Holland & Knight, 800 17th Street NW, Suite 1100, Washington, DC 20006 this ____ day of August, 2014.

_____
JOHN W. JOLLY, JR.

3

14000917CA
JETER, LISA vs. MCKEITHEN, FRANK

## Summary

| | | | | | | |
|---|---|---|---|---|---|---|
| Judge: | MCCLELLAN, HENTZ | Case Type: | Circuit Civil | | Status: | OPEN |
| Case Number: | 14000917CA | Uniform Case Number: | 032014CA000917CAXXXX | | | |
| Clerk File Date: | 7/8/2014 | Status Date: | 7/8/2014 | | | |
| SAO Case Number: | | Total Fees Due: | 0.00 | | | |
| Agency: | | Agency Report #: | | | Custody Location: | |

## Parties

| Type | Party Name | Attorney |
|---|---|---|
| DEFENDANT | MCKEITHEN, FRANK | |
| PLAINTIFF | JETER, LISA | MATTOX, MARIE A (Main Attorney) |
| DEFENDANT | ROMANS, CRAIG B | |
| DEFENDANT | GRAY TELEVISION GROUP INC | |

## Events

| Date | EventJudgeLocationResult |
|---|---|
| | No Events on Case |

## Case History

| Case NumberCharge DescriptionCase StatusDispositionOutstanding AmountNext EventAlerts |
|---|
| No Additional Cases |

## Case Dockets

| Date | Entry |
|---|---|
| 7/9/2014 | PAYMENT $440.00 RECEIPT #2014043782 |
| 7/9/2014 | PLAINTIFF'S ATTORNEY: MATTOX, MARIE A ASSIGNED |
| 7/9/2014 | CLERK TF/DOR SUMMONS ASSESSED $40.00 |
| 7/9/2014 | PLAINTIFF'S ATTORNEY: MATTOX, MARIE A ASSIGNED |
| 7/9/2014 | JUDGE MCCLELLAN, HENTZ: ASSIGNED |
| 7/8/2014 | EP - SUMMONS ISSUED - GRAY TELEVISION GROUP INC |
| 7/8/2014 | EP - SUMMONS ISSUED - CRAIG B ROMANS |
| 7/8/2014 | EP - SUMMONS ISSUED - DIVISION OF RISK MANAGEMENT |
| 7/8/2014 | EP - SUMMONS ISSUED - FRANK MCKEITHEN |
| 7/8/2014 | EP - INITIAL COMPLAINT |
| 7/8/2014 | EP - CIVIL COVER SHEET |
| 7/8/2014 | CASE FILED 07/08/2014 CASE NUMBER 14000917CA |

Filing # 15684947 Electronically Filed 07/08/2014 09:48:00 PM

IN THE CIRCUIT COURT OF THE
FOURTEENTH JUDICIAL CIRCUIT,
IN AND FOR BAY COUNTY, FLORIDA

LISA JETER, individually,
and as parent and natural guardian
of K. J., a minor child,                          CASE NO. 14-  14000917CA

       Plaintiff,

vs.

FRANK McKEITHEN in his official                   **Summons**
capacity as SHERIFF of BAY COUNTY,
FLORIDA; CRAIG B. ROMANS,
individually; and GRAY TELEVISION
GROUP INC., a.k.a. WJHG-TV,

       Defendants.

_____

THE STATE OF FLORIDA:

To Each Sheriff of the State:

       YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on Defendant:

       **FRANK McKEITHEN, in his official capacity as**
           **SHERIFF of BAY COUNTY, FLORIDA**
       **c/o Bay County Sheriff's Office**
       **3421 Florida 77**
       **Panama City, FL 32404**

       Each defendant is required to serve written defenses to the complaint or petition on **Marie A. Mattox, P. A.**, Plaintiff's attorney, whose address is **310 East Bradford Road, Tallahassee, FL 32303**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court, either before serve on plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

       DATED on _____7/9/2014_____, 2014.

                     CLERK OF THE CIRCUIT COURT

                         By: _____
                             Deputy Clerk.

Filing # 15684947 Electronically Filed 07/08/2014 09:48:00 PM

IN THE CIRCUIT COURT OF THE
FOURTEENTH JUDICIAL CIRCUIT,
IN AND FOR BAY COUNTY, FLORIDA

LISA JETER, individually,
and as parent and natural guardian
of K. J., a minor child,

      Plaintiff,

                                CASE NO. 14- 14000917CA

vs.

FRANK McKEITHEN in his official
capacity as SHERIFF of BAY COUNTY,
FLORIDA; CRAIG B. ROMANS,
individually; and GRAY TELEVISION
GROUP INC., a.k.a. WJHG-TV,

      Defendants.

# Summons

## PERSONAL SERVICE ON A NATURAL PERSON

TO:    CRAIG B. ROMANS
        c/o Bay County Sheriff's Office
        3421 Florida 77
        Panama City, FL 32404

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court, whose address is

you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

THE STATE OF FLORIDA
TO EACH SHERIFF OF THE STATE:
You are commanded to serve this Summons and a copy of the Complaint in this lawsuit on the above-named defendant(s).

Dated on _____7/9/2014_____, 2014.

                            CLERK OF THE CIRCUIT COURT

                            By:_____ _Michene Collins_____
                                  Deputy Clerk.

CCC-206

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por de las parte interesada. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, aec mention due numero de dossier ci-dessus et du nom des parties nommeesici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre, salarie, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocat,s ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme cidessous.

Plaintiff's Attorney:

MARIE A. MATTOX, P. A.
310 East Bradford Road
Tallahassee, FL 32303

Filing # 15684947 Electronically Filed 07/08/2014 09:48:00 PM

IN THE CIRCUIT COURT OF THE
FOURTEENTH JUDICIAL CIRCUIT,
IN AND FOR BAY COUNTY FLORIDA

LISA JETER, individually,
and as parent and natural guardian
of K. J., a minor child,

        Plaintiff,

v.

FRANK MCKEITHEN in his official capacity as the
SHERIFF of BAY COUNTY, FLORIDA;
CRAIG B. ROMANS, individually; and
GRAY TELEVISION GROUP INC,
a.k.a, WJHG-TV,

        Defendants.
_____/

CASE NO. 14-CA-   14000917CA
FLA BAR NO. 0739685

## COMPLAINT

Plaintiff, LISA JETER, individually, and as parent and natural guardian of K. J., a minor child, hereby sues Defendant, FRANK MCKEITHEN, in his official capacity as SHERIFF of BAY COUNTY, FLORIDA; CRAIG B. ROMANS, individually; and GRAY TELEVISION GROUP INC, a.k.a. WJGH-TV, and alleges:

### JURISDICTION

1.    This is an action brought under the common law of the State of Florida and 42 U.S.C. § 1983 involving claims which are, individually, in excess of Fifteen Thousand Dollars ($15,000), exclusive of costs and interest.

### PARTIES

2.    Plaintiff, LISA JETER, at all times pertinent to this action, has been a resident of

Bay County, Florida. She is thus *sui juris*.

3.      K.J. has also, at all times pertinent to this action, has been a resident of Bay County, Florida.

4.      At all times pertinent hereto, Defendant, FRANK MCKEITHEN, SHERIFF OF BAY COUNTY, FLORIDA ("SHERIFF"), is sued in his official capacity. McKeithen, in his official capacity as the Sheriff of Bay County, Florida, has been organized and existing under the laws of the State of Florida. Written notices of intent to initiate litigation on Plaintiff state law claims asserted herein, were submitted to Defendant SHERIFF pursuant to §768.28(6), Florida Statutes.

5.      At all times pertinent hereto, Defendant, CRAIG B. ROMANS, INVESTIGATOR, is sued in his individual capacity. At all times pertinent hereto, CRAIG B. ROMANS, in his individual capacity, was a resident of the State of Florida and was employed by Defendant SHERIFF in Bay County, Florida. He is thus *sui juris*.

6.      At all times pertinent hereto, Defendant GRAY TELEVISION GROUP INC, a.k.a. WJGH-TV ("WJGH") has been authorized to conduct business in the state of Florida.  A written demand to publish a retraction was timely submitted to Defendant WJGH pursuant to §770.02, Florida Statutes.

### STATEMENT OF THE ULTIMATE FACTS

7.      On or about July 19, 2012, minor K.J. was arrested without probable clause by Defendant ROMANS and charged with "Aggravated cyber stalking," a felony, under § 783.048, Florida Statutes. On July 19, 2012, K.J. was fifteen years of age.

8.      By information and belief, ROMANS made the decision to charge minor K.J.

2

based solely on the fact that K. J. was at one time granted administration privileges to a blog page called "Panama City's Trashiest" ("PCT") on Facebook. At the time of minor K.J.'s arrest, Bay County police investigated this blog page on allegations that some individuals were targeted with derogatory commentary postings.

9.     While minor K.J. was at one point granted administrative privileges for PCT, in reality, her involvement with the blog page was minimal. K.J. was one of approximately 700 people who clicked a button on Facebook indicating that she "liked" PCT, which enabled her to receive status updates from the site. On or about July 14, 2012, Aust Lowe, a young adult who created and administered the page, posted a message asking if anyone would be interested in being an administrator. On the same day, K.J. responded expressing interest and was "administered" to the page. K.J. then un-administered herself on or about July 15, 2012, re-administered herself again on or about July 15, 2012, and un-administered herself for the last time on or about July 16, 2012.

10.    On or about July 14, 2012, minor K.J., made an anonymous disparaging comment on PCT. Then, on or about July 17, 2012, minor K.J. apologized for her earlier comment without hiding her identity. By information and belief, K.J. was not prompted by anyone to apologize.

11.    On or about July 19, 2012, ROMANS arrested minor K.J. and charged her with the crime of "Aggravated cyber stalking," a felony. ROMANS lacked any legal justification whatsoever for arresting or charging minor K.J. with "Aggravated cyber stalking," a felony, under § 783.048, Florida Statutes for several reasons. First, § 783.048, Florida Statutes, requires "a series of acts" by the person charged with the felony of Aggravated Stalking, but, at all times

pertinent hereto, there was never any evidence that K.J. authored more than one disparaging post. Moreover, at all times pertinent hereto, minor K.J. didn't author more than one disparaging post.

12.    Second, § 783.048, Florida Statutes, requires that "a credible threat" be made by the person charged with the felony of Aggravated Stalking. At all times pertinent hereto, it was never alleged directly by any police investigator or witness that minor K.J. threatened anyone through PCT.

13.    Third, § 783.048, Florida Statutes, requires that the conduct of the person charged with the felony of Aggravated Stalking cause the victim "substantial emotional distress." At all times pertinent hereto, there was never any indication nor the slightest possibility that K.J.'s single comment so gravely injured the person whom it targeted.

14.    On the same date that minor K.J. was arrested, ROMANS and/or SHERIFF caused K.J.'s full name, mug shot, date of birth, and home address to be released to the media in Bay County, despite K.J. being a minor. Soon thereafter, several Bay county television stations and newspapers, published the information about K.J. described above together with reports of the felony charges against her and others. This story achieved a substantial amount of publicity in the Panama City area.

15.    At the time K.J.'s name was released to the media, Lowe, the creator of PCT, had not yet been arrested or charged. Even though K.J. was only tangentially affiliated with PCT and a minor, K.J.'s name and mug shot, and not Lowe's or that of others, was most prominently featured in the local media in connection with PCT, due in part to the gravity of the charges against her.

4

16. On or about October 16, 2012, an Amended No Petition was filed by the Bay County State Attorney's Office and all charges against minor K.J. were dismissed.

17. From on or about July 19, 2012, until at least October 26, 2012, Defendant WJHG repeatedly aired news stories regarding the charges filed against minor K.J. and others for their alleged involvement with the PCT blog page.

18. WJGH's broadcast that initially aired on July 19, 2012 ("initial report") introduced the story regarding minor K.J.'s and others' arrests in the PCT blog page case as their "top story." Shortly after announcing that four local teenagers have been arrested and/or charged in connection to the case, Reporter Bryan Anderson stated: "even the [suspects accused of felony cyberbullying who are] minors could wind up facing charges as adults." This statement, in juxtaposition with news of the suspect being charged and other parts of the broadcast, had the implied defamatory meaning that there is more evidence against K.J. and the other suspects than against most minors who are charged with a felony, and is actionable as defamation by implication. Alternatively, this statement is a mixed opinion, based on undisclosed facts that infer that K.J. has committed an illegal act, or one that damages her business reputation, and, thereby, actionable as defamation.

19. Soon thereafter, Anderson stated: "[i]nvestigators say four suspects used it [PCT] to publically humiliate and defame *dozens* [emphasis in the original] of Bay County teens." This statement is false and defamatory because, by information and belief, each of the four suspects was only charged with one count of felony cyberbullying. In no official document available to plaintiff did the police investigators allege that the four teenagers, individually or as a group, defamed 24 or more people. Alternatively, the statement is false and defamatory because the

5

four teenagers did not humiliate or defame 24 or more people and/or the investigators made the statement recklessly without knowing whether or not 24 or more people were humiliated or defamed by the four teenagers.

20.    As an example of the "vulgar language, descriptions of alleged sexual activity, even a photo of someone committing an act of bestiality with a goat" allegedly found on PCT, WJHG next published images of some of the offensive posts. One of the alleged posts clearly showed the words "bullet in your skull." By information and belief, WJGH did not verify that all or any of the posts they published were made by any of the four teenagers, as opposed to other visitors to PCT. None of the offensive posts aired in any of WJGH's stories were made by minor K.J. or were ever alleged to have been made by minor K.J. by the police investigators.

21.    Immediately after the last one of the offensive posts was shown, the segment broadcast the "mug shot" of each of the teenagers' under the word "suspect." Minor K.J.'s mug shot was shown first. The organization of WJGH's news story, including, but not limited to, the words "suspect" shown under each of the teenagers' mug shots immediately after the offensive posts implied that the posts were all made by the four teenagers. Nowhere did either WJGH's initial report or the follow up report state or suggest that any person other than the four teenagers could be responsible for any of the offending posts on PCT or the "sample" offensive posts broadcast in the news segments.

22.    During another part of the same broadcast, Anderson quoted a false and defamatory statement by a police investigator as follows: "[o]ne investigator called it [the case against the four teenagers] the worst case of cyberbullying he has ever seen." This statement would be understood and was intended to be understood by a reasonable observer to mean that

6

the cases against the four teenagers were very strong and that there was substantial evidence of wrongdoing. This is a statement of mixed opinion based on undisclosed facts that infer that K.J. has committed an illegal act or one that damages her business reputation and is actionable as defamation.

23.     Even though WJGH-TV gave prominent coverage to the police's side of the story, including by publishing the defamatory statement above, it gave absolutely no coverage to K.J.'s or Plaintiff's side of the story and never attempted to do so. WJGH never attempted to contact Plaintiff to obtain Plaintiff's and K.J.'s side of the story.

24.     Moreover, when Plaintiff herself contacted WJGH by email in or about October 2012 and relayed her version of the story to them, WJGH was not at all interested in what Plaintiff had to say (See paragraph 31 below).

25.     WJGH didn't cover Plaintiff's claim of innocence on behalf of K.J., didn't correct its story with regards to the exculpatory information Plaintiff repeatedly pointed out was provided to them by the prosecutor, did not report statements Plaintiff made in her email that cast doubt on the veracity of the police investigator, and made no mention whatsoever of any of the statements Plaintiff made in her email.

26.     All in all, WJGH did not just fail to investigate the story, but, in fact, purposefully avoided the truth about the story it reported.

27.     Another part of the initial report showed what appeared to be the parent of an alleged victim of bullying asserting that the perpetrators were going to pay by making the following statement: "their day will come." Immediately afterwards, the initial report tied this general statement about all bullying on PCT specifically to the four teenagers by announcing

7

"[a]nd that day came!" and reporting that four teenagers were arrested and charged. This statement implied that K.J. was guilty of the crimes with which she was charged. Moreover, WJGH's expression of support for the police's decision to charge K.J. and others provided a clear signal from which a listener could conclude that WJGH intended to state that K.J. and others are guilty of the crime of which they were accused.   Alternatively, this was a false and defamatory statement.

28.     On or about October 26, 2012, WJGH broadcast a segment regarding the dismissal of charges against K.J. and the other teenagers ("follow-up report"). The follow up report again showed images of the threatening and vulgar posts it aired earlier, and, again, quoted an investigator's statement that the case against the four teenagers was "one of the worst cases of cyberbullying" he has ever seen. Then the report listed some of the reasons that the charges against the four teenagers were dropped by the prosecutors, thus, appearing to summarize the prosecutors' reasons for dropping the charges. For example, the report announces that one of the reasons the charges were dropped was that the victims did not sufficiently cooperate with the police. But WJGH maliciously left out of this summary the most exculpatory reason provided by the State, namely, that the State affirmatively stated in its report that it was not the four teens who made most of the defamatory comments about the victims but the other users of the site.

29.     Instead of reporting that the State filed a No Petition exculpating K.J. and others, WJGH's reported that the State dropped the case because charges against K.J. and the other teenagers could not be proved. The State's Amended No Petition reported that "[t]he evidence shows that although each 'administrator' of the website had the ability to set up and post an

initial statement about any individual and *could* add comments to the post at any time, it was the other users of the site who posted individual derogatory comments about the Victim" [emphasis in the original]. WJGH's follow-up report stated: "the prosecutors say they can't prove the four teens were responsible for all the comments on the site."

30.     WJGH's follow-up report failed to retract or negate the defamatory statements and/or implications in the initial report, including the statement that the four teenagers were guilty and the statement that there was a strong case against them. The follow-up report also failed to retract the initial implication and furthered the implication that the four teenagers made all of the posts to PCT as well as all the "sample" posts broadcast in the initial and follow-up reports. Thereby, the follow-up report defamed K.J. and/or Plaintiff by implication.

31.     On or about October 29, 2012, Plaintiff notified WJGH via email that it failed to provide the exculpatory information contained in the Amended No Petition regarding K.J., that K.J.'s participation in the website was minimal, that K.J. apologized to the victim, and that ROMAN lied to Plaintiff about what charges would be filed and did little to no investigating. WJGH's News Director, Jamie Burch, replied only to say: "Lisa, According to court records, all four kids were charged. But in the end, prosecutors chose not to try the case because the state could not prove the website caused 'substantial emotional distress.' To address your concerns, I have removed the video and Kyra's name." Plaintiff then forwarded to WJGH a copy of the Amended No Petition. In response, Burch wrote to Plaintiff only: "Lisa, Thanks for sending the document. It is the same one we have. Look at the second sentence. It reads '...were charged by the Bay County Sheriff's Office with ... Cyberstalking.. [omission in the original] While the case was dismissed, charges were originally filed.'"

9

32.     Plaintiff notified WJGH that she respectfully demands a retraction from the stories published about K.J. on or about May 28, 2014, April 15, 2014 and June 24, 2014. Again, in response to these letters, WJGH declined to publish a retraction.

33.     The arrest and prosecution of minor K.J. by SHERIFF and ROMANS, as well as publication of news of the arrest publically humiliated and defamed Plaintiff and minor K.J. and caused irreparable damage to minor K.J.'s self-esteem, reputation in the community, prospects of admission to college, future employment, and other damages.

34.     Plaintiff has retained the undersigned to represent her interests in this action and is obligated to pay a reasonable fee for these services. Defendants should be made to pay said fee and any costs affiliated with this action.

## COUNT I
## FALSE ARREST/IMPRISONMENT UNDER STATE LAW
### (against SHERIFF)

35.     Paragraphs 1 through 34 are hereby realleged and incorporated by reference.

36.     This count sets forth a claim against Defendants for false arrest/ imprisonment and is pled in the alternative. For purposes of this count, at times pertinent hereto, ROMANS was functioning within the scope of their employment with Defendant SHERIFF.

37.     Plaintiff is entitled to relief against Defendant SHERIFF in that, as set forth in part above, and through its employees and agents, intentionally and unlawfully arrested and restrained minor K.J. against her will, deprived K.J. of her liberty without any reasonable cause, and maintained such complete restraint and deprivation for a period of time. The actions by the employees and agents of Defendant SHERIFF were committed within the course and scope of their employment.

10

38.   This unlawful restraint of minor K.J.'s liberty was also accomplished by the Defendant SHERIFF's agents confining K.J. to an area in which K.J. did not wish to be confined and by compelling K.J. to go where she did not wish to go.  Defendant SHERIFF restrained K.J. without any justification and in the absence of probable cause.

39.   At all times material to this action, and at all times during which minor K.J. was being unlawfully restrained, K.J. was restrained against his will, and without consent, so that she was not free to leave her place of confinement.  Defendant had a special relationship to K.J. because K.J. was arrested by their officers and/or agents and K.J. was within the foreseeable zone of risk of being falsely arrested if Defendant's breached a duty of care in ensuring that proper procedures to arrest were not followed.

40.   As a direct and proximate result of Defendant SHERIFF 's actions set forth in this count, Plaintiff, individually, and as parent and natural guardian of K.J., a minor child, has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future.  Defendant SHERIFF's liability on this count is joint and several with that of ROMANS  under other counts below.

## COUNT II
### FALSE ARREST/IMPRISONMENT UNDER STATE LAW
### (against ROMANS)

41.   Paragraphs 1 through 34 are hereby realleged and incorporated by reference.

42.   This count sets forth a claim against ROMANS in his individual capacity and is pled in the alternative.  For the purpose of this count, ROMANS was acting outside the course

11

and scope of his duties and employment with Defendant SHERIFF.

43.    The Plaintiff is entitled to relief against the ROMANS in that he intentionally and unlawfully arrested and restrained minor K.J. against her will, deprived K.J. of her liberty without any reasonable cause or color of authority, and maintained such complete restraint and deprivation for a period of time.

44.    This unlawful restraint of K.J.'s liberty was also accomplished by ROMANS confining K.J. to an area in which she did not wish to be confined and by compelling K.J. to go where she did not wish to go.  ROMANS restrained K.J. without any justification and in the absence of probable cause.

45.    At all times material to this action, and at all times during which K.J. was being unlawfully restrained, K.J. was restrained against her will, and without consent, so that K.J. was not free to leave her place of confinement. ROMANS acted in bad faith and/or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights or safety.

46.    As a direct and proximate result of ROMANS' actions, Plaintiff, individually, and as parent and natural guardian of K.J., a minor child, has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future. ROMANS' liability on this count is joint and several with that of SHERIFF under other counts herein.

## COUNT III
## NEGLIGENCE
### (against SHERIFF)

47.     Paragraphs 1 through 34 above are incorporated by reference in this count.

48.     This counts sets forth a claim against Defendant SHERIFF for common law negligence and is pled in the alternative and is based on claims that arose from the date of minor K.J.'s arrest until her release. Defendant knew or should have known that K.J. was not guilty of the crime charged and the charges should not have been brought and/or should have been immediately dropped.

49.     Upon K.J.'s arrest, a legal duty devolved upon the SHERIFF because K.J. was in the foreseeable zone of risk to be harmed by actions of the SHERIFF failures to train and supervise employees.

50.     This duty arose from the fact that K.J. was detained by Defendant SHERIFF and taken into custody. This duty arose because of the special relationship that arose between Defendant SHERIFF and minor K.J. and/or because the injuries were within a foreseeable zone of risk created when K.J. was detained by employees and/or agents of Defendant SHERIFF. Once minor K.J. was restrained of her liberty, she was in the foreseeable zone of risk and a duty of care arose. Alternatively, because of the nature of the restraint and the subsequent custodial relationship between Defendant SHERIFF Plaintiff, there was a special relationship with K.J.

51.     The actions of the SHERIFF complained of herein were "operational"functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

52.     As a direct and proximate result of the above unlawful acts and omissions,

13

Plaintiff, individually, and as parent and natural guardian of K.J., a minor child, sustained economic damages, including lost income, sustained emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of the SHERIFF's actions, and is therefore entitled to compensatory damages pursuant to the above provisions.

## COUNT IV
## NEGLIGENT SUPERVISION AND RETENTION
### (Against SHERIFF)

53.     Plaintiffs re-allege paragraphs 1 through 34 above and incorporate those allegations in this Count. This Count is pled in the alternative.

54.     This is an action against Defendant SHERIFF for negligent supervision and retention.

55.     Defendant SHERIFF breached its duty to properly supervise its agent  Defendant ROMANS.

56.     The breach of this duty to properly supervise Defendant ROMANS resulted in damages and injury to Plaintiff.  Defendant SHERIFF knew or should have known that the actions, omissions, and derelictions of its agents and employees could cause injuries to Plaintiff.

57.     Defendant SHERIFF breached its duty to hire and/or maintain the employment of employees who were fit for the duties they performed and to supervise and train its employees and agents.

58.     As a direct and proximate result of the above unlawful acts and omissions, Plaintiff, individually, and as parent and natural guardian of K.J., a minor child,  sustained damages, including emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem and inconvenience and hurt and are therefore entitled to compensatory damages pursuant to the

14

above provisions.

## COUNT V
## MALICIOUS PROSECUTION
### (Against ROMANS)

59.     Paragraphs 1 through 34 are hereby realleged and incorporated herein by reference.

60.     This is an action against Defendant ROMANS for malicious prosecution and is pled in the alternative. For the purpose of this Count alone, Defendant ROMANS was acting outside the course and scope of employment with Defendant SHERIFF.

61.     Defendant ROMANS caused the commencement and/or continuation of proceedings against K.J. The proceedings had bona fide terminations in K.J.'s favor in that the charges against K.J. were dropped.

62.     There was no probable cause or reasonable basis in fact or in law for Defendant ROMANS to cause the commencement of the proceedings against K.J.

63.     Defendant ROMANS acted with malice in initiating the proceedings against K.J. and/or in making the arrests and ROMANS knew that his actions against K.J. were not supported by even arguable probable cause.

64.     As a direct and proximate cause of this ROMANS' actions, Plaintiff, individually, and as parent and natural guardian of K.J., a minor child, has been damaged, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, and loss of reputation. These damages have occurred at present, in the past and will most likely occur in the future.

15

## COUNT VI
## FOURTH AMENDMENT VIOLATION - FALSE ARREST
### (Against ROMANS)

65.     Plaintiff re-alleges paragraphs 1 through 34 above and incorporates those allegations in this Count.

66.     Defendant ROMANS operated to violate minor K.J.'s rights under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable person would be aware.

67.     Defendant further operated to violate minor K.J.'s civil rights as protected by the Civil Rights Act, 42 U.S.C. §1983.

68.     Defendant ROMANS acted in bad faith and with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

69.     Defendant ROMANS misused his power, possessed by virtue of state law and made possible only because they was clothed with the authority of state law. The violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.

70.     The foregoing actions of Defendant ROMANS were willful, wanton and in reckless disregard of minor K.J.'s rights, and were taken without any lawful justification and/or in the absence of probable cause.  Defendant knew or should have known that there was no probable cause to arrest, imprison and/or place minor K.J. in confinement, as described more fully above, given the circumstances present and the clearly established law on the proof needed to establish "arguable probable cause."

71.     Based upon the facts presented to Defendant and the applicable law, no

16

reasonable law enforcement officer could have concluded that there existed any probable cause to arrest minor K.J. The law was well settled and clearly established that the actions of Defendants constituted the false arrest under the Fourth Amendment to the United States Constitution at the time the actions by the Defendant were committed.

72.    The actions or inactions of Defendant as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of minor K.J. when they knew of and disregarded a risk to minor K.J.'s health and safety.

73.    Defendant was acting under color of state law at all times pertinent hereto. The false arrest of minor K.J. without probable cause violated the Fourth Amendment. Defendant ROMANS misused his power, possessed by virtue of state law and made possible only because the Defendant was clothed with the authority of state law. The violation of K.J.'s rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983. Plaintiff, individually, and as parent and natural guardian of K.J., a minor child, is entitled to punitive damages against this Defendant.

74.    As a direct and proximate cause of Defendant's actions, Plaintiff, individually, and as parent and natural guardian of K.J., a minor child, has been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future.

75.    Plaintiff has been forced to retain counsel to represent her to vindicate their rights. Pursuant to 42 U.S.C. §1988, Plaintiff is entitled to an award of reasonable attorneys fees and costs and to punitive damages against this Defendant.

## COUNT VII
## DEFAMATION BY IMPLICATION
### (Against WJHG)

76.    Paragraphs 1 through 34 are re-alleged and are incorporated herein by reference.

77.    This is an action against Defendant WJHG for defamation by implication for some of the statements made by WJGH about minor K.J. in the initial report and the follow-up report, as detailed, in part, above.

78.    Defendant, through its actions, published, caused to be published, or allowed to be published statements that created a false impression about minor K.J. to third parties, as set forth in part above.

79.    The statements made by Defendant were malicious and intended to harm K.J. Alternatively, Defendant was negligent in publishing the statements, and/or published the statements with knowledge that they created a false impression and/or published the statements with reckless disregard as to the falsity of the impression thereby created.

80.    The statements referred to above did harm K.J.s' and or Plaintiff's reputation in the community, subjected her to distrust, ridicule, contempt or disgrace or tended to injure her in her trade or profession. The statements deter others from associating with her and are actionable on their face. The communications made by Defendant imputed to K.J.'s and/or Plaintiff's conduct, characteristics, and a condition incompatible with the exercise of their lawful business, trade, profession and office.   Alternatively, Defendant engaged in slander per quod and Plaintiff, individually, and as parent and natural guardian of K.J., a minor child, is entitled to damages as a consequence thereof.

81.    Defendant did not publish these statements in good faith.

82.     As a result of the falsity of the statements made by this Defendant set forth above and the publication thereof, Plaintiff, as a parent and natural guardian of K.J., a minor child, has suffered damages which include, without limitation, special and general damages. Defendant engaged in slander per se which is actionable on its face and general damages are presumed. Alternatively, Defendant engaged in slander per quod and Plaintiff is entitled to damages as a consequence thereof. The communications made by this Defendant imputed to K.J.'s and/or Plaintiff's conduct characteristics and a condition incompatible with the exercise of her lawful business, trade, profession and office. These statements which have been made by this Defendant regarding K.J. attribute conduct and characteristics to K.J. which in effect brands her as someone who engaged in criminal wrongdoing, which is incompatible with her functioning as a members of her community and occupation and/or brand Plaintiff as the mother of a minor who engaged in criminal wrongdoing, which is incompatible with her functioning as a members of her community and occupation. Few good, decent or honorable people want to have business relationships with a criminal and/or the mother of a minor who is a criminal or have such a person with the qualities attributed to her by Defendant serving them in a personal or professional capacity.

83.     As a result of the defamatory statements, Plaintiff, individually, and/or as parent and natural guardian of K.J., a minor child, has suffered extreme humiliation, embarrassment, and mental anguish, pain and suffering, inconvenience, loss of consortium, lost capacity for enjoyment of life, loss of business and profits, loss of reputation, good standing in the community and other tangible and intangible damages. These damages have occurred in the past, present and are reasonably expected to continue into the future.

## COUNT VIII
## DEFAMATION
### (Against WJHG)

84.   Paragraphs 1 through 34 are re-alleged and are incorporated herein by reference.

85.   This is an action against Defendant WJHG for defamation for some of the statements made by WJGH about minor K.J. in the initial report and follow-up report, as detailed, in part, above.

86.   Defendant, through its actions, published, caused to be published, or allowed to be published false statements about minor K.J. to third parties, as set forth in part above.

87.   These statements made by Defendant were malicious and intended to harm K.J. Alternatively, Defendant was negligent in publishing these statements, and/or published these statements with knowledge that they were false and/or published these statements with reckless disregard as to the statements' falsity.

88.   The statements referred to above did harm K.J.s' and/or Plaintiff's reputation in the community, subjected K.J. and/or Plaintiff to distrust, ridicule, contempt or disgrace or tended to injure K.J. and/or Plaintiff in their trade or profession. These statements deter others from associating with minor K.J. and/or Plaintiff and are actionable on their face. The communications made by Defendant imputed to K.J. and/or Plaintiff's conduct, characteristics, and a condition incompatible with the exercise of K.J.'s and/or Plaintiff's lawful business, trade, profession and office. Alternatively, Defendant engaged in slander per quod and Plaintiff, individually, and/or as parent and natural guardian of K.J., a minor child, is entitled to damages as a consequence thereof.

89.   Defendant did not publish these statements in good faith.

20

90.     As a result of the falsity of the statements made by this Defendant set forth above, and the publication thereof, Plaintiff and K.J., a minor child, have suffered damages which include, without limitation, special and general damages.  Defendant engaged in slander per se which is actionable on its face and general damages are presumed.  Alternatively, Defendant engaged in slander per quod and Plaintiff is entitled to damages as a consequence thereof.  The communications made by this Defendant imputed to K.J.'s and/or Plaintiff conduct characteristics and a condition incompatible with the exercise of her lawful business, trade, profession and office.  These statements which have been made by this Defendant regarding K.J. attribute conduct and characteristics to K.J. which in effect brands her as someone who engaged in criminal wrongdoing and/or brand Plaintiff as the mother of a minor child who engaged in criminal wrongdoing, which is incompatible with their functioning as a members of their community and occupation.  Few good, decent or honorable people want to have business relationships with a person who engaged in criminal wrongdoing and/or the mother of a child who engaged in criminal wrongdoing or have such a person with the qualities attributed to her by Defendant serving them in a personal or professional capacity.

91.     As a result of the defamatory statements, Plaintiff, individually, and as parent and natural guardian of K.J., a minor child, has suffered extreme humiliation, embarrassment, and mental anguish, pain and suffering, inconvenience, loss of consortium, lost capacity for enjoyment of life, loss of business and profits, loss of reputation, good standing in the community and other tangible and intangible damages. These damages have occurred in the past, present and are reasonably expected to continue into the future.

## CONDITIONS PRECEDENT

All conditions precedent to bringing this action have occurred.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and as a parent and legal guardian of a minor child, prays for the following relief:

(a)    that process issue and this court take jurisdiction over this cause;

(b)    that judgment be entered against the Defendants and for the Plaintiff, awarding damages including without limitation pecuniary, compensatory, and punitive damages against Defendants for the violations of law enumerated herein, as allowed by law;

(c)    that this court award interest on monetary recovery obtained pursuant to law;

(d)    that this court award costs and attorney's fees against Defendants as allowed by law; and

(e)    that this court award such other and further relief as is just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues set forth herein which are so triable.

DATED this 8th day of July, 2014.

Respectfully submitted,

s/ Marie A. Mattox
Marie A. Mattox; FBN 0739685
MARIE A. MATTOX, P. A.
310 East Bradford Road
Tallahassee, FL 32303
Telephone:  (850) 383-4800
Facsimile:  (850) 383-4801
Email: marie@mattoxlaw.com
Secondary email: michelle2@mattoxlaw.com
Secondary email: amy@mattoxlaw.com

ATTORNEY FOR PLAINTIFF

23

IN THE CIRCUIT COURT OF THE
FOURTEENTH JUDICIAL CIRCUIT,
IN AND FOR BAY COUNTY FLORIDA

LISA JETER, individually,
and as parent and natural guardian
of K.J., a minor child
     Plaintiff,

v.                                CASE NO. 14-917CA

FRANK MCKEITHEN in his official capacity as the
SHERIFF of BAY COUNTY, FLORIDA;
CRAIG B. ROMANS, individually; and
GRAY TELEVISION GROUP INC,
a.k.a. WJHG-TV,
     Defendants,

_____ /

## NOTICE OF REMOVAL

**COMES NOW** Defendant Craig Romans, in his individual capacity, by and through undersigned counsel, and hereby notifies this Court that this cause has been removed to the United States District Court for the Northern District of Florida, Panama City Division, and respectfully incorporates the Notice of Removal filed on this date in that Court. The Court is notified that it shall proceed no further unless and until the case is remanded pursuant to Title 42 U.S.C. § 1446(d).

Respectfully submitted this ___ day of August, 2014.

_____
**JOHN W. JOLLY, JR.**
Florida Bar No. 291961
**JOLLY & PETERSON, P.A.**
Post Office Box 37400
Tallahassee, Florida 32315
Tel:    (850) 422-0282
Fax:   (850) 422-1913

*Attorneys for Defendant Craig B. Romans*

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been sent via U. S. Mail and/or by CM/ECF System delivery to, Marie A. Mattox, Marie A. Mattox, P.A., 310 East Bradford Road, Tallahassee, FL 32303 and Charles Tobin, Holland & Knight, 800 17th Street NW,  Suite 1100, Washington, DC 20006 this ___ day of August, 2014.

 

                          _____

                          JOHN W. JOLLY, JR.