IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LISA JETER, individually,
and as parent and natural guardian
of K.J., a minor child,

    Plaintiffs,

v.                                      CASE NO. 5:14-cv-00189-RS-EMT

FRANK MCKEITHEN in his official
capacity as SHERIFF of BAY COUNTY,
FLORIDA; CRAIG B. ROMANS,
individually; and GRAY TELEVISION
GROUP INC., a.k.a. WJHG-TV,

    Defendants.
_____/

## ORDER

Before me are Defendant Gray Television Group Inc.'s Motion to Dismiss Plaintiff K.J.'s Claims with Prejudice (Doc. 13) and Plaintiff's Memorandum in Opposition (Doc. 26).

### I.    STANDARD OF REVIEW

To overcome a motion to dismiss, a plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven

consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S. Ct. 2229, 2232 (1984). I must construe all allegations in the complaint as true and in the light most favorable to the plaintiff. *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (citing *Lowell v. American Cyanamid Co.,* 177 F.3d 1228, 1229 (11th Cir. 1999)).

## II.   BACKGROUND

Plaintiff K.J., a minor, was arrested on charges of aggravated cyber stalking, a felony, based on the fact that K.J. was granted administration privileges to a Facebook page called "Panama City's Trashiest." (Doc. 1 at 10). The page was allegedly used by anonymous members to bully other teenages. (*Id.*). The bullying allegedly included "vulgar language, descriptions of alleged sexual activity, even a photo of someone committing an act of bestiality with a goat," (*Id.* at 13), as well as words like "bullet in your skull." (*Id.*).

The charges against K.J. were later dropped. (*Id.* at 12).

From July 19, 2012, to October 26, 2012, Defendant Gray Television Group, Inc. ("Gray") reported the story about charges being filed against K.J. and others associated with the Facebook page. (Doc. 1 at 12). K.J. alleges that, in the course of these broadcasts, Gray made at least six defamatory statements:

1. Stating that "Even the [suspects who are] minors could wind up facing charges as adults," (*Id.* at 12);

2. Stating that "[I]nvestigators say four suspects used [the page] to publically humiliate and defame *dozens* of Bay County teens," (*Id.* at 12-13);

3. Showing the word "suspect" next to K.J.'s mugshot immediately after showing examples of posts from the page, even ones not necessarily attributable to the four suspects, (*Id.* at 13);

4. Stating that "[o]ne investigator called it the worst case of cyberbullying he has ever seen," (*Id.*);

5. Showing a parent of an alleged victim saying "their day will come," and afterwards stating "[a]nd that day came!" and reporting that suspects were arrested and charged, (*Id.* at 13-14);

6. Misstating, in a follow-up report, the reasons that the state dropped the charges, and leaving out the affirmative statement that it was not the four teens who made most of the comments about the victims on the page, (*Id.* at 15-16).

K.J. filed suit against the state law enforcement for her arrest and also against Gray for defamation and defamation by implication. The law enforcement properly removed the entire case to federal court since it implicated a federal

question. Gray now moves to dismiss the defamation and defamation by implication claims against it for failure to state a claim upon which relief can be granted.

### III.   ANALYSIS

#### a.   *Legal Standard*

Under Florida law, to state a claim for defamation, the plaintiff must show that the statement had the following elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Florida courts also recognize defamation by implication where a "defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Id.* at 1108 (citations and quotations omitted). The law does not require perfect accuracy, only that the publication be substantially true. *Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1477 (S.D. Fla. 1987), *citing McCormick v. Miami Herald Pub. Co.,* 139 So.2d 197, 200 (Fla.App.1962). Defamation is evaluated objectively, and the test is whether the "common mind" would understand the words as reasonably susceptible to a defamatory meaning. *Id.*, *citing Valentine v. CBS, Inc.,* 698 F.2d 430, 432 (11th

Cir.1983). Where the communication could not possibly have a defamatory or harmful effect, a court may dismiss the complaint for failure to state a claim. *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (citations and quotations omitted).

In Florida, news media have a qualified privilege to accurately report on the information they receive from government officials. *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. Dist. Ct. App. 1993). A report is accurate and fair if it conveys a "substantially correct" account of the official record. *Id.* The press need not investigate the accuracy of official statements before reporting their contents. *Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So. 2d 972, 976 (Fla. Dist. Ct. App. 1987) ("That purpose is served, notwithstanding any inaccuracy of the information, when the information brought out in official proceedings is reported.").

K.J.'s argument that no qualified privilege exists for defamation by implication claims is entirely without merit, as the Florida Supreme Court has specifically held that "[a]ll of the protections of defamation law that are afforded to the media and private defendants are therefore extended to the tort of defamation by implication." *Jews for Jesus*, 997 So. 2d at 1108. For the avoidance of doubt: the qualified news media privilege does apply to defamation by implication claims in Florida.

### b.     *Application*

I will apply the law to each of the alleged defamatory statements in turn.

However, I note that K.J., in her Memorandum in Opposition, only appeared to defend only the first two allegations of defamation. (*See* Doc. 26 at 6-7 (noting the "averments in support of her defamation claim" and listing only ¶¶ 18-19 of the Complaint). K.J. has therefore abandoned the other four allegations by not addressing them. *See Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001), *citing Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) ("When a party fails to respond to an argument or otherwise address a claim [in a response to a motion to dismiss], the Court deems such argument or claim abandoned.").

### 1.    "Even the [suspects who are] minors could wind up facing charges as adults,"

This statement cannot be the basis of a defamation claim, because the statement is entirely truthful. K.J. does not dispute that the suspects could have been prosecuted as adults under Florida law for the felony charges that they were facing.

This statement also fails to state a claim for defamation by implication. K.J.'s assertion that this statement had an implied defamatory effect of conveying that "there is more evidence against K.J. and the other suspects than against most minors who are charged with a felony," (Doc. 1 at 12), fails as a matter of law.

Under the objective test, no reasonable viewer of the broadcast would have perceived that this statement made any comment about the amount of evidence that police had against K.J. Rather, this entirely accurate statement, even taken with the broadcast as a whole, conveyed to the "common mind" only the true statements that the minors were being charged with a serious crime and that the state could have legally prosecuted the minors as adults.

K.J.'s alternative theories, that the statement is a "mixed opinion" or that it damages her business reputation, both fail because they cannot overcome the qualified media privilege.

2. *"[I]nvestigators say four suspects used [the page] to publically humiliate and defame dozens of Bay County teens,"*

The crux of K.J.'s argument here appears to be that there was no official documentation that the state believed that the suspects bullied "dozens" of people—i.e., 24 or more—and that the statement therefore does not qualify for the privilege. Whether the police in fact told the media that the teens had bullied at least 24 people is a disputed fact not appropriate for consideration at this time. However, even if the police did not tell the media the number of victims of the four teens, the defamation claim still fails as a matter a matter of law.

With respect to defamation claims, the law does not require perfect accuracy, only that the publication be substantially true. *Nelson*, 667 F. Supp. at 1477. Rather than the details, the "gist" or "sting" of the statement must be

defamatory. *Rubin*, 271 F.3d at 1306. Here, regardless of whether K.J. was alleged by the police to have bullied "dozens" of victims or "at least one" victim, the statement communicates the same "gist" to the audience. The teens were charged with being administrators in a group that harassed a large number of victims, and the "common mind" would not have thought meaningfully differently of K.J.'s reputation had she instead been accused of the same affiliation and bullying just one victim, an act which K.J. concedes doing. (Doc. 1 at 10). The exact number of victims alleged to have been personally bullied by the four accused teens is a detail that does not affect the substantial truth of the statement or the "gist" conveyed to the audience. It therefore cannot state a claim for defamation.

### c. *The Compact Disk*

The parties dispute whether I may consider in deciding this motion the compact disk that Gray submitted allegedly containing the defamatory broadcasts. Because I have decided to dismiss this case by considering only the complaint on its face, I need not decide whether it would be appropriate to consider the disk.

### IV. CONCLUSION

I therefore find that Plaintiff has failed to state a claim for defamation or defamation by implication as to two statements which she maintains are defamatory. Because it is early in the litigation and the facts are not yet fully developed, the claims are dismissed without prejudice.

The relief requested in Defendant Gray Television Group Inc.'s Motion to Dismiss Plaintiff K.J.'s Claims with Prejudice (Doc. 13) is **GRANTED**. Plaintiff's claims against Defendant Gray Television Group, Inc. are **DISMISSED WITHOUT PREJUDICE**.

**ORDERED** on October 7, 2014.

<u>/S/ Richard Smoak</u>
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**