IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KYRA JETER,

    Plaintiff,

v.                                  Case No. 5:14-cv-189-MW-EMT

FRANK MCKEITHEN in his official
capacity as SHERIFF of BAY COUNTY,
FLORIDA; CRAIG B. ROMANS,
individually,

    Defendants.
_____/

## ORDER

Pending before the Court are Defendant's Motion for Summary Final Judgment (Doc. 43), Plaintiff's Response in Opposition (Doc. 51), and Plaintiff's Statement of Disputed Materials Facts in Opposition.

Plaintiff Kyra Jeter sues Defendants Officer Craig Romans and Bay County Sheriff Frank McKeithen for a variety of federal and state claims stemming from an alleged false arrest. Officer Romans arrested Jeter, then a high school student, on suspicion of aggravated cyberstalking after she made two anonymous posts on a Facebook page called "Panama City's Trashiest." In the posts, Jeter made insulting and derogatory comments directed at other high school students. The state later decided not to prosecute Jeter.

1

After review, Jeter's federal law claim must fail as a matter of law because Officer Romans is entitled to qualified immunity. Because jurisdiction was predicated on that claim, the remaining claims are remanded back to the state court in which they originated. Defendants' motion for summary judgment is therefore granted.

## I.     STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere

"scintilla" of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II.   BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008). All reasonable doubts about the facts shall be resolved in favor of the non-movant. *Id.*

Plaintiff Kyra Jeter made two posts on an online Facebook page called "Panama City's Trashiest." (Doc. 50 at 2). She was fifteen years old when the posts were made but is now eighteen years of age.

### a.   "Panama City's Trashiest"

On March 26, 2012, a young man activated a Facebook page known as "Panama City's Trashiest" used to publish comments to insult and bully local children. (Doc. 50 at 2).

On July 14, 2012, Jeter became an administrator of the page, which gave her the ability to read private messages and post comments. (*Id*. at 4). Her first post was made while on the phone with a friend, who told her to write something mean about another teen, calling her "names and ugly things." (*Id*.; Doc. 43 at 3). Shortly after, Jeter removed herself as administrator. (Doc. 50 at 4). The following day,

she signed in to be an administrator again. (*Id*.). That evening, at the behest of a friend, Jeter made a second post calling a different individual a "slut." (Doc. 50 at 4).

The next morning, Jeter removed herself from her administrative capacities and made a post on her personal page apologizing for "hurting anyone's feelings with her two posts." (Doc. 50 at 5).

### b. *The Investigation*

After receiving a complaint on July 16, 2012, from a minor and her parents regarding a disparaging post on the Facebook page, Defendant Deputy Craig Romans initiated an investigation into the matter. (Doc. 50 at 5). Subsequently, Deputy Romans interviewed the aggrieved minor who reported that she was not personally upset regarding the post about her, (*id*.), but the victim of the second post was not interviewed. On July 19, 2012, Deputy Roman contacted Jeter to discern her involvement on the Facebook page. (*Id*.). Deputy Romans met with Jeter and her friend at Lynn Haven Recreational Center across the street from Jeter's home later that morning. (*Id*.). He drove Jeter, who was not handcuffed, to her home to inform her mother, Lisa Jeter Wilkinson, of the investigation and that her daughter was being arrested for charges of aggravated cyberstalking. (*Id*. at 6). Deputy Romans informed her mother that it would not be necessary for her to follow to the police station because he would bring Plaintiff home afterward. (*Id*.).

4

Approximately forty-five minutes to an hour later, Deputy Romans returned the minor to her mother. (*Id.*).

Deputy Romans subsequently completed an affidavit for the probable cause of Jeter's arrest, as well as other potential defendants. (Doc. 50 at 7). The affidavit stated that "between March 26, 2012, and July 16, 2012, the defendants willfully, maliciously, and repeatedly engaged in a continuous course of conduct . . . directed at approximately 16 specific individuals, causing substantial emotional distress to these people and serving no legitimate purpose." (Doc. 53-6). Similar language was used in drafting the synopsis of his investigation, as well as a list of witnesses for the State to call in the event of criminal prosecution. (*Id.*).

### c.    *No Petition Filed*

The State Attorney's Office subsequently issued an Amended No Petition Letter on October 16, 2012, in the case filed against Jeter. (Doc. 50 at 8). The Assistant State Attorney decided not to prosecute Jeter. She concluded that the elements of aggravated cyberstalking were not satisfied because the individual victims did not personally experience substantial emotional distress and there was insufficient evidence to indicate that Jeter committed a series of acts directed at an individual. (*Id.*).

Deputy Roman was suspended for "failing to properly investigate a criminal case." (Doc. 50 at 9).[1]

### d. *Procedural History*

Kyra Jeter (then a minor and proceeding through her mother, Lisa Jeter) filed suit in state court against Defendant Bay County Sheriff Frank McKeithen and Officer Romans.[2] She alleges state law false arrest against Romans and McKeithen (Counts I and II), Negligence against McKeithen (Count III), Negligent Supervision and Retention against McKeithen (Count IV), Malicious Prosecution against Romans (Count V), and a claim under 42 U.S.C. § 1983 against Romans for violations of her Fourth Amendment rights (Count VI).

## III. DISCUSSION

Because federal jurisdiction is predicated on Jeter's § 1983 claim against Romans for violations of her Fourth Amendment rights, I address that claim first. Jeter argues that Romans did not have probable to cause to arrest her for cyberstalking and violated her Fourth Amendment right to be free from false arrest.

### a. *Legal Standard*

A warrantless arrest without probable cause violates the Constitution and is the basis for a § 1983 claim. *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir.

---

[1] Romans claims that he was actually suspended for a clerical error.
[2] Jeter also filed defamation claims against Gray Television Group, Inc., after a news channel did a story about her arrest. Those claims were dismissed by stipulation. (*See* Doc. 30).

1990). Probable cause, however, is an absolute bar to a § 1983 claim for false arrest. *Id.* For probable cause to exist, the arrest must be objectively reasonable under the totality of the circumstances. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1119 (11th Cir. 1992). An officer has probable cause to arrest "if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). The existence of probable cause is a matter of law to be decided by the judge where the facts are not in dispute. *Marx*, 905 F.2d at 1506.

Intertwined with the question of probable cause is the issue of qualified immunity. *Von Stein*, 904 F.2d at 578. Qualified immunity is a shield against liability for government actors, prohibiting civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Qualified immunity allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

It is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 512, 105 S. Ct. 2806, 2808, 86 L. Ed. 2d 411 (1985).

To receive qualified immunity, the defendant public official must prove as a threshold matter that he or she was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Courson v. McMillan,* 939 F.2d 1479 (11th Cir. 1991) (quoting *Rich v. Dollar,* 841 F.2d 1558, 1563-64 (11th Cir. 1988)). Once this is established, the burden shifts to the plaintiff. *Id.* The court then engages in a two-step inquiry. *Hadley*, 526 F.3d at 1329. The first question is whether, taken in the light most favorable to the plaintiff, the facts alleged show that the defendant's conduct violated a constitutional or statutory right. *Id.* If so, the second question is whether the right, be it constitutional or statutory, was clearly established. *Id.* Courts may exercise their discretion in deciding which of the two prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

When assessing probable cause as part of a qualified immunity analysis, a lower standard—arguable probable cause—applies. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007). Arguable probable cause asks whether a reasonable officer in the circumstances *could have believed* that probable cause existed. *Id.* This inquiry is another means of framing the "clearly established"

prong of the qualified immunity test. *Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009).

### *b.     Application*

Romans arrested Jeter for aggravated cyberstalking.[3] However, an officer is shielded by qualified immunity so long as he had probable cause to arrest for *any* offense.[4] *Durruthy v. Pastor*, 351 F.3d 1080, 1090 n.6 (11th Cir. 2003). Romans argues that he had probable cause, or at least arguable probable cause, to arrest Jeter for non-aggravated cyberstalking.

Cyberstalking is illegal in Florida. § 784.048(2), Fla. Stat. Statutes define "cyberstalk" to mean "to engage in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose." § 784.048(1)(d), Fla. Stat. The referenced "course of conduct" is further defined as "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose." § 784.048(1)(b), Fla. Stat.

---

[3] Cyberstalking becomes "aggravated" where the cyberstalking conduct involves a "credible threat" or is committed against someone under 16 years old. § 784.048(3), (5), Fla. Stat.

[4] This is not the case, however, when an officer knowingly falsifies an affidavit to arrest an individual. In those instances, qualified immunity does not shield the officer's misconduct solely because probable cause existed to arrest the individual for another crime.

Jeter appears to make three arguments that Romans lacked probable cause to arrest her. First, she argues that she did not engage in a "course of conduct" "directed at a specific person." Second, she argues that her conduct did not cause "substantial emotional distress" to the victims of the cyberbullying. Third, she argues that Romans's allegedly falsified arrest affidavit precludes qualified immunity. I address each in turn.

*1. The "Course of Conduct" "Directed at a Specific Person"*

First, Jeter argues that Romans lacked probable cause to arrest Jeter because Jeter did not "engage in a course of conduct" "directed at a specific person" pursuant to the statute.

The parties do not dispute that Romans knew that Jeter, acting as a moderator for Panama City's Trashiest, posted inappropriate comments about two separate individuals. The parties also do not appear to dispute that a "course of conduct" under the statute may be satisfied by two similar acts. *See T.B. v. State*, 990 So. 2d 651, 654 (Fla. 4th DCA 2008) ("[E]ngaging in a 'series' of acts or acting 'repeatedly' in the context of the statute means what the commonly approved usage of these words suggest—acting more than once.").

The parties instead dispute what exactly the statute requires must be "directed at a specific person" in order to constitute cyberstalking. Jeter argues, without citing to any authority, that the statute indisputably requires that a "course

of conduct to communicate . . . words" be "directed at a specific person." Under her interpretation, in order to meet the statute's definition of cyberstalking, a person must communicate offensive words to a single individual on at least two separate occasions.

However, the statute is, on its face, ambiguous as to what the phrase "directed at a specific person" modifies. While Jeter's interpretation seems reasonable, the statute may just as plausibly be modifying only "words" and not "course of conduct." Under this interpretation, the statute requires "a course of conduct to communicate" "words . . . directed at a specific person." In other words, the statute could just as easily say that while the offensive words must be directed at a specific person, a course of conduct may be established by multiple sets of words directed at multiple, distinct individuals.

No controlling court has ruled that the statute means anything to the contrary.[5]  Nor is it dispositive that the state prosecutor read the statute differently for purposes of determining whether the law is clearly established. Thus, since the meaning of the statute is not "clearly established," Romans is entitled to qualified immunity if he can satisfy any plausible interpretation of the statute. *See Pearson*, 555 U.S. at (2009) (favorably discussing cases where qualified immunity was

---

[5] Jeter points to no binding authority resolving the ambiguity in her favor. This poses a problem for Jeter; once an officer raises the defense of qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to it. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

granted based on courts' hesitation to unnecessarily resolve an "ambiguous state statute").

Here, it is undisputed that Jeter engaged in a "course of conduct"—that is, she posted bullying comments on at least two occasions—and that each time she did, the "words" were "directed at a specific person." Therefore, under such a reading, Romans would have probable cause to arrest, and is thus entitled to qualified immunity.

Similarly, it was not clearly established that Romans lacked probable cause to make the arrest for cyberstalking under the operative language of Florida's stalking statute.[6] After defining "cyberstalking," the statute states that "[a] person who willfully, maliciously, and *repeatedly* follows, harasses, or cyberstalks another person commits the offense of stalking, a misdemeanor of the first degree." § 784.048(2), Fla. Stat. (emphasis added).

Here, too, it is not clearly established that "repeatedly" necessarily refers to repeatedly cyberstalking a particular individual. For the same reasons that § 784.084(1)(d) may refer to "a course of conduct to communicate" "words . . . directed at a specific person," § 784.084(2) may plausibly refer to a person who "willfully, maliciously, and repeatedly" "cyberstalks another person." Jeter has not pointed to, nor does this Court find, any precedent resolving the ambiguity in her

---

[6] Although neither party addresses this issue head-on, it is necessary to discuss in order to determine whether Romans is entitled to qualified immunity.

favor. The Florida Supreme Court has stated that, in order to find liability for the crime of stalking, "[t]he conduct must be willful, malicious, and repeated, and form a course of conduct which would cause substantial emotional distress in a reasonable person in the same position as the victim." *Bouters*, 659 So. 2d at 237 (citations and quotations omitted). In the absence of a clear holding to the contrary, Romans could plausibly read this to simply mean that the "conduct" of cyberstalking must be "repeated," which again would justify Jeter's arrest and provide Romans with qualified immunity.

I need not determine whether Romans had actual probable cause to make the arrest, as that would needlessly require me to decide the correct interpretation of the statute. *See Pearson*, 556 U.S. at 238 ("[The] underlying principle of encouraging federal courts to decide unclear legal questions in order to clarify the law for the future is not meaningfully advanced when the definition of constitutional rights depends on a federal court's uncertain assumptions about state law.") (citations and quotations omitted).

## 2. *"Substantial Emotional Distress"*

Second, Jeter argues that Romans did not have probable cause to arrest her because her conduct did not "cause substantial emotional distress." Jeter notes that the victim interviewed by Romans communicated that she was not emotionally

13

distressed by the posts.  (Doc. 50 at 5).  Jeter says a reasonable officer could have found probable cause to arrest her in light of that testimony.

In support of her argument, Jeter cites several cases considering the subjective reaction of the victim.  *See Ravitch v. Whelan*, 851 So. 2d 271, 273 (Fla. 5th DCA 2003) ("nor did [the victim] testify that these incidents placed her in fear"); *Weisz ex rel. Weisz v. Clair*, 989 So. 2d 667, 669 (Fla. 4th DCA 2008) (considering victims testimony that he does not feel safe walking through the neighborhood, sleeps with a gun by his bed, and attends counseling as a result of the stalking); *Leach v. Kersey*, Case No.: 2D14-1812 (Fla. 2d DCA April 17, 2015) (Doc. 52-1) ("In fact, [the victim] herself clearly did not suffer substantial emotional distress from these contacts.").  But the holdings of state appellate courts do not clearly establish law for qualified immunity purposes.  *See Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010) ("[Plaintiffs] must point to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida to show that the constitutional violation was clearly established.") (citations and quotations omitted).

At the time of the incident, the Florida Supreme Court in *Bouters v. State* had said that, for § 784.048 purposes, the conduct in question must "cause[ ] substantial emotional distress in a *reasonable person* in the same position as the victim."  659 So. 2d 235, 237 (Fla. 1995) (alteration in original) (emphasis added).

Because *Bouters* could be read as setting forth an objective standard,[7] the question becomes whether a reasonable officer in Romans's position could have believed that Plaintiff's conduct objectively caused the victims substantial emotional harm.

Here, Romans is entitled to qualified immunity because he had arguable probable cause to believe that Jeter's conduct was objectively emotionally distressing. That is, "a reasonable officer in the circumstances could have believed," *Skop,* 485 F.3d at 1137, that Jeter's conduct would cause "substantial emotional distress in a reasonable person in the same position as the victim," *T.B.,* 990 So. 2d at 654 (citations and quotations omitted). While the specifics of Jeter's Facebook postings are difficult to discern from these facts, Jeter admitted that in one post she called someone "names and ugly things" and in the other she called a girl a "slut." (Doc. 43 at 3). Romans, who was in the midst of investigating a Facebook page that was used for the purpose of bullying and insulting children, reasonably could have believed that Jeter's derogatory postings would cause emotional distress to a reasonable person in the victims' circumstances, especially considering that both the victims were minors and still in high school. Indeed, the

---

[7] This is not to say that *Bouters should* be read as establishing an objective standard that holds individuals criminally liable for cyberstalking in the absence of subjective emotional distress by the victims. As Jeter indicates, other courts have considered the subjective state of the victim to determine whether the conduct in question would have caused a reasonable person substantial emotional distress. This Court need not reach this issue because, under qualified immunity analysis, Romans benefits from the muddled case law. The point is that the law was *not* clearly established at the time of the incident that a victim's lack of subjective emotional distress precluded a probable cause finding that Jeter had violated § 784.048.

posting calling the one victim a "slut" is strikingly similar to calling a victim a "queer" or "faggot," which courts have specifically held is sufficient to cause a reasonable person emotional distress. *See T.B.*, 990 So. 2d at 655. Romans further could have reasonably believed that the victims' statements that they were not actually emotionally distressed by Jeter's posts were "not controlling." *Brown*, 397 So. 2d at 1155.

### 3. The "Falsified" Arrest Affidavit

Finally, Jeter argues that Romans falsified his arrest affidavit and is thus not entitled to qualified immunity. Jeter alleges that Romans falsified the probable cause affidavit when he stated that "between March 26, 2012 and July 16, 2012, the defendants willfully, maliciously and repeatedly engaged in a continuous course of conduct . . . directed at approximately 16 specific individuals, causing substantial emotional distress to these people and serving no legitimate purpose." (Doc. 53-6). The law is clearly established that "the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen." *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999).

Jeter's argument fails for two reasons. First, the Complaint does not allege that Romans falsified an arrest affidavit, nor does it allege that such conduct deprived Jeter of her constitutional rights. The Complaint only alleges that

16

"ROMANS lacked any legal justification for arresting or charging" her with cyberstalking for three reasons, all of which are grounded in Florida statutes. (Doc. 1 at 10-11). Accordingly, this Court need not consider Jeter's falsified affidavit claim. *See Mead v. McKeithen*, 571 F. App'x 788, 791 (11th Cir. 2014).

Second, even if it were appropriate to consider Jeter's argument as a mere defense to Romans's claim for qualified immunity, the argument would still fail. Simply put, Jeter has produced no evidence that could convince a reasonable jury that Romans knowingly made false statements, principally because the affidavit does not contain a false statement.

Romans wrote up the affidavit as it applied to all the defendants he was investigating, not just Jeter. Indeed, he refers throughout his narrative to "defendants"—that is, the multiple individuals he is investigating. (Doc. 53-6). He truthfully believed that the defendants, in total, directed their conduct at approximately 16 individuals. (*See* Doc. 53-2 at 2). Additionally, Romans's full investigative report, which was dated just four days after Jeter's arrest, clearly conveys that he suspected that Jeter made two posts, and the report's narrative seems to align very closely with Jeter's own description of the facts. (*Id.* at 6-7).

While Romans should have broken down the probable cause for arresting Jeter more specifically and individually in the arrest affidavit, no reasonable jury could believe that he made any deliberately false statements. Romans's mistake

17

was a "reasonable mistake in the legitimate performance of [his] duties," which is "characteristic of the type of conduct that the policies of qualified immunity seek to protect." *Kingsland v. City of Miami*, 382 F.3d 1220, 1233 (11th Cir. 2004).

Having considered all of Jeter's arguments, I therefore find that Romans had at least arguable probable cause to arrest Jeter for cyberstalking, and he is therefore entitled to qualified immunity from suit under § 1983. The remaining state law claims will be remanded to state court.

### IV.    CONCLUSION

Therefore Jeter's § 1983 claim fails as a matter of law. Officer Romans had arguable probable cause to arrest her for cyberstalking, and is therefore entitled to qualified immunity.

The relief requested in Defendant's Motion for Summary Final Judgment (Doc. 43) is **GRANTED.** Plaintiff's federal claim (Count VI) is **DISMISSED WITH PREJUDICE.** Because the federal question claims are dismissed, the Court declines to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(c) over the remaining state law claims, which are **DISMISSED WITHOUT PREJUDICE**. The Clerk shall enter judgment accordingly and is directed to close the file.

**SO ORDERED on June 12, 2015.**

**s/Mark E. Walker              
United States District Judge**
